**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joe Hand Promotions Incorporated, | No. CV-24-00436-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Sand Bar Enterprises LLC et al., | |
| Defendants. | |

Before the Court is Plaintiff's Motion for Default Judgment (Doc. 16) against Defendants Valerie Elisa Sutter, Rick Lynn Gaddis, and Amanda Elisa Gaddis ("Defendants"). No response to the Motion has been filed. For the following reasons, the Motion will be granted.

**I. BACKGROUND**

On March 1, 2024, Plaintiff filed a Complaint against Defendants alleging that Defendants violated two provisions of the Communications Act of 1934, 47 U.S.C. § 553 and 47 U.S.C. § 605. (Doc. 1 at 7). Defendants are three individuals who allegedly owned and operated Defendant Sand Bar Enterprises LLC, an Arizona limited liability company that conducted business as an establishment called the Sand Bar ("Sand Bar" or the "Establishment") in Parker, Arizona.[1] (*Id.* at 2–3). Plaintiff alleges that it held the exclusive commercial license to distribute and authorize the public display of an Ultimate Fighting

---

[1] Defendant Sand Bar Enterprises was terminated from this action on August 23, 2024. (Doc. 15).

Championship broadcast (the "Program"). (*Id.* at 2). Plaintiff alleges that it hired an auditor, Thomas Buster, to investigate whether the Sand Bar was publicly exhibiting Plaintiff's programming without proper authorization. (Doc. 16-1 at 4–5). On March 4, 2024, Mr. Buster went to the Sand Bar and observed that the Establishment was broadcasting the Program on "some" of the Establishment's eight televisions to approximately 43 patrons. (Docs. 16-5; 16-1 at 5).

Plaintiff argues that Defendants publicly displayed the Program at the Sand Bar without authorization by means of unlawfully intercepting or receiving a satellite or cable signal. (Doc. 1 at 2, 7). Plaintiff served the Defendants on May 28, 2024. (Doc. 7). The Defendants failed to appear in the action, and Plaintiffs filed an Application for Entry of Default on July 16, 2024. (Doc. 12). The Clerk filed the Entry of Default on August 16, 2024, and Plaintiff filed its present Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b)(2) on October 9, 2024.

**II.    DISCUSSION**

    **a. Subject Matter Jurisdiction, Personal Jurisdiction, and Service**

When default judgment is sought against a non-appearing party, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter judgment in the first place."). A court has a similar duty with respect to service of process. *See Fishman v. AIG Ins. Co.*, No. CV 07-0589-PHX-RCB, 2007 WL 4248867, at *3 (D. Ariz. Nov. 30, 2007) ("Because defendant has not been properly served, the court lacks jurisdiction to consider plaintiff's motions for default judgment."). These considerations are "critical because '[w]ithout a proper basis for jurisdiction, or in the absence of proper service of process, the district court has *no power to render any judgment* against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process.'" *Id.* (citing *S.E.C. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007)).

First, the Court may exercise subject matter jurisdiction because Plaintiff's Communications Act claims invoke federal question jurisdiction. *See* 28 U.S.C. § 1331. Next, as to personal jurisdiction, this Court has personal jurisdiction over Defendants because Defendants are Arizona citizens and were properly served, and the actions underlying this case took place in Arizona. *See Pennoyer v. Neff*, 95 U.S. 714, 722 (1877) (noting that "every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory"); *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (noting that a federal court lacks personal jurisdiction over defendant unless defendant properly served). According to the Complaint, Defendants Valerie Elisa Sutter, Rick Lynn Gaddis, and Amanda Elisa Gaddis are Arizona citizens. (Doc. 1 at 2–3). With respect to service, Defendants were properly served on May 28, 2024, by leaving the summons at the Defendants' residences with a person of suitable age and discretion who resides there in accordance with Fed. R. Civ. P. 4(e)(2)(B). (Docs. 7, 7-1, 7-2).

With preliminary considerations of jurisdiction and service of process out of the way, this Court turns to whether default judgment is appropriate.

### b.  Default Judgment Analysis: *Eitel* Factors

A court has the discretion to enter a default judgment after a defendant's default. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). In exercising this discretion, a court must consider the seven "*Eitel* factors": (1) the possibility of prejudice to the plaintiff; (2) the claim's merits; (3) the complaint's sufficiency; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the policy favoring decisions on the merits. *Id.* at 1471–72. In applying these factors, the Complaint's factual allegations, except those pertaining to the amount of damages, will be taken as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

#### i.  First, Fifth, Sixth, and Seventh *Eitel* Factors

The first, fifth, sixth, and seventh factors weigh in favor of or are neutral about default judgment in cases in which the defendants have not participated in the litigation at

all. *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020) (D. Ariz. Mar. 26, 2020) ("In cases like this one, in which Defendants have not participated in the litigation at all, the first, fifth, sixth, and seventh factors are easily addressed."). Regarding the first factor, which considers the possibility of prejudice to the plaintiff, Plaintiff here will be left without recourse and would therefore suffer prejudice in the absence of default judgment. *Id.* As to the fifth factor, which considers the possibility of a dispute regarding material facts, Defendants' failure to participate means there is no dispute of material fact. *Id.* at *4. The sixth factor considers whether the default was due to excusable neglect. *Id.* Here, Defendants' failure to participate after being personally served does not indicate that default was due to excusable neglect. *Id.* Lastly, the seventh factor—which considers the policy favoring decisions on the merits—would typically weigh against an entry of default judgment. *Id.* However, this consideration is not dispositive, as default judgments exist to deal with wholly unresponsive parties. *Id.* Here, a decision on the merits is impossible, given that Defendants failed to appear. In sum, the first, fifth, sixth, and seventh factors weigh in favor of default judgment.

### ii. Fourth *Eitel* Factor

Under the fourth factor, this Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (citation omitted). "[A] default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint." *Id.* at 499. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Zekelman*, 2020 WL 1495210, at *4 (internal quotations omitted) (citation omitted). Unlike the Complaint's other factual allegations, those pertaining to damages are not taken as true upon default. *Geddes*, 559 F.2d at 560. Thus, a plaintiff "is required to prove all damages sought in the complaint." *Tolano v. El Rio Bakery*, No. CV-18-00125-TUC-RM, 2019 WL 6464748, at *6 (D. Ariz. Dec. 2, 2019) (internal quotations omitted) (quoting *Philip Morris USA, Inc*,

4

219 F.R.D. at 498). A plaintiff must "provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." *Fisher Printing Inc. v. CRG LTD II LLC*, No. CV-16-03692-PHX-DJH, 2018 WL 603299, at *3 (D. Ariz. Jan. 22, 2018) (citing *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011)). Courts may rely on declarations submitted by the plaintiff in determining appropriate damages. *Tolano*, 2019 WL 6464748, at *6 (citing *Philip Morris USA, Inc.*, 219 F.R.D. at 498).

Here, Plaintiff seeks statutory damages under § 553 "in the discretion of this Court of up to the maximum amount of $60,000.00" and attorney's fees. (Doc. 1 at 8). As the damages sought are statutory and the amount is left to the Court's discretion, this factor is neutral. *G & G Closed Cir. Events, LLC v. Macias*, No. 20-CV-02916-BLF, 2021 WL 2037955, at *3 (N.D. Cal. May 21, 2021).

### iii. Second and Third *Eitel* Factors

The second and third *Eitel* factors consider the claim's merits and the complaint's sufficiency. *Eitel*, 782 F.2d at 1471. Courts frequently consider these to be the two most important factors. *Zekelman*, 2020 WL 1495210, at *5 (citing *Viet. Reform Party v. Viet Tan - Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019)). These factors are generally thought to require a plaintiff to state a claim on which he may recover. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).

#### 1. Liability under 47 U.S.C. §§ 553 and 605

Plaintiff alleges liability under two federal communications laws, 47 U.S.C. § 605 and 47 U.S.C. § 553, but only seeks damages in its Motion for Default Judgment under § 605. (Doc. 16-1 at 7). Both sections prohibit the unauthorized interception and reception of transmissions, but § 553 applies to cable television transmissions and § 605 applies to interstate radio communications, including satellite television signals. 47 U.S.C. § 553(a)(1) ("No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."); 47 U.S.C.

§ 605(a) ("No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."); *see DirecTV v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (applying § 605 to satellite television signals). A plaintiff may recover under only one statute for a single act of interception. *Macias*, 2021 WL 2037955, at *3 (collecting cases).

In this case, Plaintiff only seeks statutory damages under § 605. (Doc. 16-1 at 7). Plaintiff's Complaint states that "Defendants' unauthorized exhibition of the Program was accomplished through the interception and/or receipt of a satellite signal or, in the alternative, through a cable signal." (Doc. 1 at 7). Thus, the pleading is silent as to whether Defendants intercepted the Program via a satellite transmission or a cable signal. "Because Plaintiff did not allege that Defendants intercepted a satellite transmission—as opposed to a cable signal—in its complaint, it is not a factual allegation that can be taken as true." *Macias*, 2021 WL 2037955, at *3. "Indeed, the fact that violations of both 605 and 533 were alleged in the Complaint indicates that Plaintiff is unable to specify the type of transmission." *J & J Sports Prods., Inc. v. Coria*, No. C 12-05779 JSW, 2015 WL 1089044, at *4 (N.D. Cal. Feb. 27, 2015).

Courts in the Ninth Circuit have varied in deciding whether to apply § 553 or § 605 where there is no evidence of the method of piracy. *See J & J Sports Prods., Inc. v. Silva*, No. 3:17-CV-00681-MO, 2017 WL 5632659, at *2 (D. Or. Nov. 20, 2017). Some courts in this District have applied § 605, which awards greater damages, at the request of the plaintiff seeking default judgment. *G & G Closed Cir. Events, LLC v. Ayala*, No. CV-22-01803-PHX-DJH, 2023 WL 4269637, at *3 (D. Ariz. June 29, 2023); *J & J Sports Prods., Inc. v. Meza Jimenez*, No. CV-17-1320-PHX-DGC, 2017 WL 4474562, at *2 (D. Ariz. Oct. 6, 2017); *J & J Sports Prods., Inc. v. Molina*, No. CV15-0380 PHX DGC, 2015 WL 4396476, at *1 (D. Ariz. July 17, 2015). More commonly, however, district courts in this Circuit apply § 553 if there is no evidence of a satellite dish or cable box, because cable boxes are more easily hidden than satellite dishes and thus are more likely to be the source

of transmission if there is no evidence of a satellite dish. *Macias*, 2021 WL 2037955, at *4; *Innovative Sports Mgmt., Inc. v. Nunez*, No. 22-CV-07136-JSC, 2023 WL 4551069, at *4 (N.D. Cal. July 13, 2023); *Joe Hand Prods. v. Holmes*, No. 2:12-CV-00535-SU, 2015 WL 5144297, at *4 (D. Or. Aug. 31, 2015) (collecting cases). Thus, this Court opts to follow other courts in this Circuit and apply § 553. *See Macias*, 2021 WL 2037955, at *4.

Violations of § 553 are strict liability offenses that do not require evidence of intent nor direct evidence of an unlawful interception of a television broadcast. *Holmes*, 2015 WL 5144297, at *5. Instead, circumstantial evidence—such as an investigator observing a public display of the broadcast at an establishment without permission—may be sufficient. *Id.* In this case, Plaintiff alleges that it held the sole exclusive license to distribute and authorize the display of the Program and that the Program broadcast was offered via cable systems. (Doc. 1 at 4). Additionally, Plaintiff alleges that that the broadcast of the Program was advertised on social media and that Plaintiff's auditor witnessed the Program publicly displayed without proper authorization at Defendants' Establishment. (Doc. 16-1 at 5–6). Thus, the Court finds that Plaintiff has alleged facts that, taken as true, are sufficient to allege a § 553 violation.

### 2. Individual Liability under § 553

Plaintiff seeks default judgment against Defendants Valerie Elisa Sutter, Rick Lynn Gaddis, and Amanda Elisa Gaddis. (Doc. 16 at 1). To prove that a defendant owner or operator of an establishment is individually liable under § 553, a plaintiff must show that (1) the defendant "had a right and ability to supervise the infringing activities" and (2) "had an obvious and direct financial interest in those activities." *Silva*, 2017 WL 5632659, at *3 (citations and quotations omitted). This standard requires a showing "that the defendant had supervisory power over the infringing conduct itself" rather than "the shareholder's mere right and ability to supervise the corporation's conduct generally." *J & J Sports Prods., Inc. v. Walia*, No. 10-5136 SC, 2011 WL 902245, at *3 (N.D. Cal. Mar. 14, 2011). Additionally, a plaintiff must allege a direct financial interest from the § 553 violation "above and beyond a generic linkage between the profits of the shareholder and the LLC."

7

*Id.*

The Court finds that Plaintiff has alleged facts that, if taken as true, are sufficient to establish individual liability for Defendants. Plaintiff alleges that the Defendants are members of an LLC that owned the Sand Bar, "operated, maintained, and controlled the Establishment," had the "right and ability to supervise the activities of the Establishment," and "had an obvious and direct financial interest" in the Sand Bar's activities. (Doc. 1 at 3–4). Plaintiff further alleges that "Defendants, themselves and/or through their agents, servants, and/or employees, took affirmative steps to circumvent the commercial sublicensing requirement and unlawfully obtained the Program." (*Id.* at 5); *see Silva*, 2017 WL 5632659, at *3 (finding more than "mere involvement as a shareholder" when complaint alleged that defendant intentionally intercepted or broadcasted program or directed employees to do so). Plaintiff's exhibits reveal that Defendant Valerie Elisa Sutter, who posted an advertisement for the Program's exhibition on social media, was specifically a "moving active conscious force" behind the infringing act. *Walia*, 2011 WL 902245, at *3; (Doc. 16-7 at 2). Thus, the Court finds that "Plaintiff alleges both a general ability to supervise based on their positions … and a specific ability to supervise the infringing conduct itself." *Nunez*, 2023 WL 4551069, at *5.

With respect to the financial interest prong, the Complaint, Motion, and attached exhibits also reveal that Defendants advertised the Program on social media and exhibited the Program "for the commercial purposes of attracting paying customers, patrons, and guests, thereby wrongfully benefiting financially by infringing upon Plaintiff's rights." (*Id.* at 6; Doc. 16-7 at 2). Specifically, Plaintiff alleges that "Defendants realized increased proceeds that came from cover charges and sales to patrons buying food and/or drinks that came to the Establishment on the night of the Program." (Doc. 16-1 at 15). These facts demonstrate a financial interest tied to Defendants' exhibition of the Program beyond a shareholder's general financial interest in an LLC. *See Silva*, 2017 WL 5632659, at *3 (finding no individual liability when the only financial interest alleged was the defendant's general financial interest as a shareholder of LLC that owned the infringing establishment).

In sum, the Court finds that Plaintiff's facts support a judgment that the remaining individual Defendants are liable for a violation of § 553 and that the second and third *Eitel* factors weigh in favor of default judgment. Accordingly, default judgment is appropriate against the Defendants.

### c. Relief Sought

Unlike the Complaint's other factual allegations, those pertaining to damages are not taken as true upon default. *Geddes*, 559 F.2d at 560. Rather, a plaintiff "is required to prove all damages sought in the complaint." *Tolano v. El Rio Bakery*, No. CV-18-00125-TUC-RM, 2019 WL 6464748, at *6 (D. Ariz. Dec. 2, 2019) (internal quotations omitted) (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. at 498). A plaintiff must "provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." *Fisher Printing Inc. v. CRG LTD II LLC*, No. CV-16-03692-PHX-DJH, 2018 WL 603299, at *3 (D. Ariz. Jan. 22, 2018) (quoting *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011)). Courts may rely on declarations submitted by the plaintiff in determining appropriate damages. *Tolano*, 2019 WL 6464748, at *6 (citing *Philip Morris USA, Inc.*, 219 F.R.D. at 498).

Under § 553, "the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii). Additionally, the statute provides that Courts may authorize additional damages up to $50,000 for violations that were willful and for purposes of commercial advantage or private financial gain. 47 U.S.C. § 553(b)(2). Courts in this Circuit consider various factors in determining damages in similar cases, including whether the defendant implemented a cover charge or raised other prices for food and drinks; the number of patrons and televisions used; actual losses, including the cost of the broadcast rights, to the plaintiff; and whether the defendant is a repeat offender. *Macias*, 2021 WL 2037955, at *5 (collecting cases).

Plaintiff asks for $10,000 in statutory damages, $50,000 in enhanced statutory

9

damages, and attorney's fees and costs. While Plaintiff's Complaint alleges that Defendants advertised the broadcast of the Program, it lacks allegations of any additional enhancement factors, such as repeat offender status, premiums for food and drinks, or a cover charge. (Doc. 1 at 6). Plaintiff's investigator noted that approximately 43 patrons were present at the Establishment during the Program's broadcast out of an approximate capacity of 90 to 100 people. (Doc. 16-1 at 5). Thus, the Court finds that the record is unclear on whether Defendants substantially profited from the violation. *See Macias*, 2021 WL 2037955, at *6.

In light of these facts, "the Court finds that an award of modest damages would be just in this case." *Id.* Other courts in this Circuit have deemed the cost of the commercial sublicense fee to broadcast the Program appropriate statutory damages. *See id.* (collecting cases). Accordingly, the Court awards $1,095 in statutory damages under Section 553(c)(3)(A)(ii), which represents the cost of the fee to broadcast the Program according to Plaintiff's declaration and the Sand Bar's seating capacity. (Docs. 16-4; 16-1 at 5).

With respect to enhanced damages, the evidence present supports an inference that Defendants willfully intercepted and exhibited the broadcast for purposes of commercial advantage and private financial gain. Defendants advertised the Program on social media and broadcast it on multiple screens. (Docs. 16-7 at 2; 16-5; 16-1 at 5). Defendants therefore "benefitted from the illegal interception by avoiding paying the licensing fee and presumably attracting additional patrons who spent more time in the establishment watching the Program." *Macias*, 2021 WL 2037955, at *6. However, the Court finds that Plaintiff's request for $50,000 in enhanced damages is disproportional to comparable awards by courts in this Circuit, which have frequently awarded enhanced damages of double the statutory award. *See id.*; *Innovative Sports Mgmt., Inc. v. Nunez*, 2023 WL 4551069, at *7. Instead, the Court determines that an enhanced damages award of $2,190—double the statutory damages—is appropriate and sufficient in light of Defendant's affirmative misconduct and in order to deter future willful violations.

The Court may award reasonable attorney's fees and costs under 47 U.S.C. §

553(c)(2)(C). While Plaintiff alleged that it incurred costs totaling $690 in filing this suit, Plaintiff has made no request for a specific amount of attorney's fees or other expenses, nor has its counsel submitted any documentation of costs, expenses, fees, or rates. (Doc. 16-6 at 2). Because the record provides no basis for determining a reasonable award, the Court denies Plaintiff's request for attorney's fees and costs without prejudice.

### III.   CONCLUSION

Having reviewed Plaintiff's Motion and supporting documents, and having considered the *Eitel* factors as a whole, the Court concludes that the entry of default judgment is appropriate for Plaintiff's claim under 47 U.S.C. § 553. However, the Court finds that an entry of default is not appropriate for Plaintiff's claim under 47 U.S.C. § 605 because it is insufficiently plead.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment (Doc. 16) is **granted in par**t and **denied in part**. Default judgment, pursuant to FRCP 55(b)(2), is **granted** in favor of Plaintiff Joe Hand Promotions, Inc.—and against Defendants Valerie Elisa Sutter, Rick Lynn Gaddis, and Amanda Elisa Gaddis—on Plaintiff's claim under 47 U.S.C. § 553.

**IT IS ORDERED** that Plaintiff be awarded a total of $3,285 in damages ($1,095 in statutory damages and $2,190 in enhanced damages).

**IT IS ORDERED** that Plaintiff's remaining claims shall be dismissed without prejudice.

Dated this 12th day of November, 2024.

Honorable Steven P. Logan
United States District Judge